Good morning, your honors. May it please the court, I'm David Force, representing the plaintiff appellants in this case, and it seems to me, based upon not only the briefs, but the descriptions of the holdings in the cases that I recently submitted as supplemental authority, we kind of have two ships passing in the night here, maybe inadvertently and maybe not, but what appears to be the defendant's position about what a content regulation is, is that if it doesn't specify the subject matter of the proscribed speech, then any restrictions on what can be said about anything are not content regulations. The reason I submitted the Chaker case is obviously a very different legal and factual context than this one, but I believe it shows what the fundamental issue is in looking at a content regulation, and that is, is one side favored and one side disfavored? It's kind of an equal protection analysis of ideas. But your argument, it seems to me, is rather, what should I say, interesting at the very least, when you say that the words profane, abusive, and slanderous as limiting factors implicitly favor one side over the other and therefore constitute in and of itself viewpoint discrimination. That is correct. Is there any case that has held that those three words are viewpoint discrimination? As to those three words, I cannot identify such a case. The issue, I think, the reason Chaker, I think, is important is because it shows you that by ignoring other speech, you get a viewpoint discrimination. In Chaker, the statute said that it's a crime for a citizen to make false defamatory statements about a police officer. And this court looked at that and said, but the reverse of the coin is it's not a crime or punishable in any way for a police officer to make false and defamatory statements about a citizen. And therefore, it is a viewpoint content discrimination. What happened in this case, you know, in Chaker, there's another factor, I think, that's important to this case. And that is the way this court looked at the legislative history to find out what was really going on there and whether it was really intended to be viewpoint discrimination. If you look at the history of this resolution and order, you can't have much doubt about that. Initially, the board of commissioners told these two individuals that they were not going to be allowed to speak at any board meetings anymore, period, because the board didn't like what they had to say. Then they went to, then they got legal advice, which was you can't really say that just these two people can't speak. So what you need to do is come up with some way that you prohibit what they say, and that's what they did. You had the commissioners actually saying, and this is whether you utilize the newspaper articles that we believe are competent evidence, showing those discussions, or whether you use the transcripts that the board themselves created after the fact. Counsel, let me ask you, did Shaker overrule White, our case, which affirmed a rule regarding personal impertinence, slanderous or profane remarks, or loud, threatening, personal abusive language, or any other disorderly conduct which disrupts, disturbs, or otherwise impedes the orderly conduct of any council meeting? No. It did not. And, Your Honor, I think that's a very important point to bring out. The only reason, according to this Court, that it affirmed those regulations in White was because they were directed not to the content of the speech, but to the conduct of the speaker and the effect upon the meeting. That because it's lawful to restrict speech that disrupts the orderly processes of the meeting, okay? Well, what about profane and abusive language? How is that distinguishable? Well, there is no provision in this regulation and order that restricts it to anything that disrupts anything. And we know what the board meant by abusive. And, in fact, it's acknowledged by the board in its brief. They called, and was found by the magistrate judge in his finding, they called the members of the board incompetent, stubborn, and liars. The members of the board found that to be abusive and slanderous, and, therefore, it was the kind of speech they intended and set out this regulation to prohibit. There's no question about that. There is no ambiguity in the legislative history. This regulation was intended to stop two people from criticizing these board members and their staff about specific political issues in Clatsop County. In the brief, in the red brief, the defendant utilizes as an example of the kind of speech that can be proscribed. The statement by Mr. Toosing that Ms. Reynolds, the county counsel, must have gotten her law degree from a Cracker Jack box. Well, that's considered abusive by Ms. Reynolds, and it's considered abusive and, I guess, slanderous. It is pure political speech about a matter of public concern, and simply by saying you can't speak in public about the politics of Clatsop County if the chair may consider your speech to be profane, abusive, or slanderous. It is the most basic kind of prior restraint. Remember, in order to speak at all, each person must sign with a signature. They won't allow you to just write your name. A card that says you give your consent to the chair to silence you if he considers in his unfettered discretion your speech to be profane, abusive, or slanderous in content. Why isn't this like the Kent case where we affirm the rules regarding registration? What you affirmed in that case, Your Honor, were rules that we don't contest in this matter. We don't say that the board cannot limit speakers to three minutes. We don't say that the board cannot limit speakers in this limited public forum to speak on matters of county concern. We don't say that the board can't prohibit disruption. We don't say the board can't prohibit threatening or obscene speech. We just say that for one person to get to decide what other people can talk about in public meetings in Clatsop County based on his view as the target of that speech that's abusive is a restraint on speech. It's a viewpoint restraint. Well, let me see if I understand. What you're saying is obscene and obstructive? Is that what you said? Obscene or threatening. Oh, threatening. All right. That's okay, but profane and abusive is not? That's right. What's the difference? Well, obscene speech, according to the Supreme Court, is not protected by the First Amendment to begin with. Threatening speech very often wouldn't be. And in Oregon, if it's a direct threat of harm to an individual, it's criminal. There's no doubt that the board can prohibit things that are already prohibited in its public meetings just as they're prohibited everywhere else. I mean, you could not walk up to one of the commissioners on the streets of Astoria and threaten them either. What's the problem then with an ordinance that simply, according to you, states the obvious and tracks existing law and says you can't engage in this kind of behavior? Because it is not limited to obscene and threatening speech, and it's not intended to, let alone limited to, disruption of the meetings. Nobody ever said these people disrupted a meeting. Nobody ever said they spoke more time than they were allowed to. They just didn't like the content of what they had to say. And it's the subjectivity of saying, for example, abusive. They thought that telling Ms. — saying that Ms. Reynolds got her law degree out of a Cracker Jack box was abusive. Okay? That means that it was critical. That's all it means in that context. And the chair by this regulation has absolute unfettered discretion, can't even be challenged by the other members of the board, to decide whether any speech is abusive. It sounds to me like the challenge you're making is an as-applied challenge, that you don't have a problem with a regulation that prohibits the things that are listed in this ordinance. You're just saying that it's not being applied. Well, that's not the case, Your Honor. I mean, there is an as-applied challenge. I don't think it's an as-applied challenge when you look at whether a regulation gives unfettered discretion to determine the content of speech. I think it's a facial challenge. Okay. And I also think it's a facial challenge when you say that — and this is what White said expressly. White said if the regulation were merely to limit the kinds of things people could talk about at those meetings, it would be unconstitutional. But it was narrowly tailored not to be directed to the subject matter, but to be directed to the conduct and the results. Okay? And it specifically says you can't do these particular things if it causes disruption. Okay? There's no contention. There's no mention of that word or anything like it in this regulation. And there is nothing in this record to assert that these people ever did that. Counsel, I'm — They went along with the regulations up to the point where they were told they couldn't talk about certain things. And that's where they brought this act. Counsel, I'm looking at the public comment sign-in card. Yes. And this is what it says, rules for public comment, and there's a whole bunch of rules. But here's the one that I'd like your comment on. Okay. It says, no comment shall contain profane, obscene, abusive, threatening, or slanderous conduct. You seem to suggest that some of those terms are okay, but others are not. Yes. Yes. It's abusive speech in the — speech that is critical enough of a political officer that he's going to consider it abusive is not illegal in this country. Neither is profane speech. Neither is slanderous speech in a criminal sense. I mean, if you get slandered, then you have a right to a civil remedy. But you can't prohibit the slander before it occurs, which is what this regulation expressly intends to do. And then on page 8 of the blue brief, Your Honor, is the registration requirement. It says, a citizen desiring to make public comments must fill out a public comment card at the beginning of the formal session and submit the card to the board secretary. The information on the card must include the citizen's name, address, and subject and indicate the citizen is willing to follow this policy in speaking. And then paragraph 2 of the policy says the chairperson may eject any person violating these rules from the meeting. But, counsel, when you look at these rules, wouldn't the ordinary citizen coming in to say his or her piece in front of a meeting of the commissioners, wouldn't they understand what this is really about? I mean, don't you have to apply kind of a – Yes. I think the people in Astoria and Boston probably certainly do. Maybe you could let me – If you don't criticize the commissioner. Mr. Forrest, perhaps you could let me finish my question. Would that be possible? Yes, it is. I'm sorry, Your Honor. My suggestion to you is that you might want to look at this in context. Wouldn't a reasonable citizen construe that passage that I just read to you as the common, ordinary decorum that one should expect in a public meeting? Your Honor, I don't think that we limit speech to – I mean, there's no law that says you have to keep a civil tongue in your head when you talk politics in this country. And I think that the context of that rule that every citizen will understand is you can't say anything in this meeting that the chairman doesn't want you to say. All right. Isn't there a difference, however, between someone saying whatever this person wants to say in whatever loud voice or slanderous assertion he wants to make across the street from this courthouse in Pioneer Courthouse Square versus participating in a meeting in a limited public forum of a local government doing its regular business? Isn't there a significant difference between the two? Yes, but the U.S. Supreme Court has held over and over and over again that when any public body creates a public forum for public comment, then the content of what is stated by the people who participate in that public forum cannot be limited any more than it could be in Pioneer Square. And, you know, if it's facially unconstitutional, the fact that there's an alternative time and place and manner is irrelevant, according to the U.S. Supreme Court. All right. You're under three minutes. Do you want to reserve? I would like to reserve. You may do so, counsel. Thank you. We'll hear from the county. Thank you. Good morning. May it please the court. My name is Cecil Renish-Smith, and I'm representing the defendants in this matter. The first thing I would like to say, and this is something that Judge Nelson has brought up a couple of times asking Mr. Force, is I do not see how this case is not on all fours with the Kindt case. And the Kindt case is the law of the circuit, and I do not hear Mr. Force stating that that case was wrongly decided or asking this panel to overrule that case. Which we couldn't do anyway, even if we were asked, right? Correct. I believe it would take a little more effort than just the three of you. And the rules adopted by the Clatsop County Commission, if you look at the rule, it's set forth in the red brief in full. Of course, I left it on my table, but I believe it's around page 15. The preamble to that rule states that it is for the purpose of having a safe and efficient public comment period. Does this make this, then, not a public forum? What this court said in Kindt was that, and drawing upon white, but to a certain extent broadening the holding in white, was that the structured aspect of a public, like a government, local governing board meeting, is such that the rules of public forum, non-public forum, limited public forum, designated public forum, don't really work. And what this court said in Kindt was, whatever you call it, because of the special nature of this type of proceeding and meeting, the wide open, you get to say anything you want, whenever you want, however you want to say it, doesn't fit. And partially because of what is going on at those meetings, they are being conducted, government business is being conducted at those meetings, and so they need to be run efficiently and in a certain way. But also to allow for public participation, but in a structured, non-disruptive way. And both white and the Kindt case indicated that not only could threatening language or obscene language or abusive language be disruptive, so could irrelevant language or repetition. And so, yes, it goes to content to a certain extent, but what this court has said in those cases is, in this situation, as long as it is viewpoint neutral, and as long as the rules are reasonable, that's all they have to be. And that's what this rule is. Why don't you comment on the cracker box comment? I disagree with Mr. Force's characterization of why those comments were set forth in the red brief. They were not given as examples of, this is prescriptive language that would be prescribed, or this is language that is per se abusive. It was set forth to give the flavor of what comments were being given at these meetings, and how some of those comments may have indeed raised concerns. And the specific, you must have gotten your law degree out of a cracker jack box, or did you get your law degree out of a cracker jack box, I would, as an attorney, I would probably consider that to be abusive. But also, it is argumentative, irrelevant, not, it could be disruptive to the efficient government proceedings. It's the kind of comment that under white and kind, this court, I understand to have said, is something that could be considered disruptive. And because of that, could be prescribed. Could it be prescribed by one person alone? I mean, the authority of the chairman of the board to make his or her own individual assessments of this is abusive as opposed to being nasty, as opposed to being unkind. Well, I find it interesting that counsel for plaintiffs doesn't seem to have a problem with that one person deciding that something is obscene or threatening, but does have a problem with that one person deciding if it's abusive or profane or slanderous. Well, you seem to distinguish them because obscene or threatening is subject to criminal sanctions, whereas the others are not. Yes, but if there is someone that needs to say that is obscene, I believe there's a fairly famous quote about, I know it when I see it. That's right, yes. But put again in the power of the chair of the board to individually control what is abusive or not. Well, I believe that the reference in the rule as to the chair deciding whether something is abusive, threatening, obscene, slanderous, or profane, acknowledges that the chair of the board is the person who is running the meeting and is therefore the person that would be having to make any decisions about anything that the proceedings. And he is presumptively acting for the board. As chair? As chair, he is running the meeting, yes. And whether or not he, I would argue that there is not unfettered discretion in deciding whether something is abusive, slanderous, profane, obscene, or threatening. There is discretion, but the fact of the matter is that most of us, the ordinary citizens, going to these kinds of meetings do have an idea of what is abusive, profane, slanderous, obscene, or threatening. And so there are standards as to what those are. In any event, if this court were to conclude that this regulation is wider than what it approved in Kindt or White, then Mr. Forrest has already agreed that he has no problem with the obscene or threatening part. If this court were to decide that the rule, the purpose of which is to have a safe and efficient comment period, can be construed more narrowly by just saying only obscene and threatening language shall be proscribed, then it can do so, but the issue still is the chairperson is deciding that. Mr. Forrest has already said he doesn't have a problem with the chairperson deciding that. So I really, I don't see why not having a problem with that, he can still have a problem with the other three. It's still the chairperson deciding. I've got a very narrowing construction of the rule, and you're suggesting that that is a possibility here, to narrowing the rule to obscene and threatening. It is a possibility for the same reason it was possible in White, in that although this rule does not have the specific language in White about disruptive language, what it does say in its preamble is the purpose of the rule is for a safe and efficient comment period. And I would suggest that it can be inferred from that that the exclusion or prescription of disruptive comments is, follows. There are a number of issues with Plankton's arguments that I'd like to get into. One of the chief concerns that the county has about the plaintiff's characterization of the rule is, the plaintiffs keep referring to it prescribes language that is critical of the county, of the government. There's nothing in the rule that says that. That is how the plaintiffs are interpreting it. But the rule says nothing about that. And as Judge O'Scanlan pointed out, the ordinary citizen reading those words would assume that they're saying, behave yourselves, be polite, not, don't criticize us. And it doesn't, the abusive, it could be abusive of anyone, it could be slanderous of anyone, that it's not just critical of the government. So it's not, it's viewpoint neutral, which this court in kind said is all it has to be. Well, if you say a council member came from a less than, well, a cracker box, aren't you criticizing the council member, and is a council member, therefore, criticizing the government? Yes, but also if Mr. Force and I were both at the meeting, and I was speaking, and I said Mr. Force must have gotten his law degree from a cracker jack box. That would be critical and abusive of Mr. Force. And under this rule, could be prescribed. It's not critical of the government. But isn't there a difference between a federal citizen and a member of the council? I mean, you're criticizing a member of the council as opposed to a regular citizen. And therefore, my question was, aren't you, therefore, criticizing the government? Because the government is being administered by this particular council member. I believe I understand your question to mean, shouldn't it, therefore, be more protected, because it's a criticism of the government? There's a complaint that because you were doing this, you were criticizing the government. And you said, no, it's not critical of the government. It's just abusive language of that nature. And I was just trying to say, couldn't it also be critical of the government? That particular abusive comment was critical of a government employee. But it wasn't the fact that it was critical of the government employee that made it prescriptive. It was the fact that it was abusive. All right. Judge Burns asked whether this was an as-applied challenge or a facial challenge. And Mr. Force indicated that the arguments he was making were a facial challenge. He mentioned that there was an as-applied challenge. I would suggest, and we pointed this out in the red brief, that they have waived any appeal of the district court's judgment as to their claim for damages. That their particular First Amendment rights were subject to repression by this rule. They have made no argument in their opening brief that the district court's ruling as to that count was incorrect and should be reversed. And the defendants at the district court level had moved for summary judgment as to all of plaintiff's claims and all of plaintiff's counts. And had argued that even if that there was no evidence that they had actually been repressed, that they had been denied the opportunity to speak, plaintiffs have not, on appeal, have not made a specific argument in support of an argument that that was wrong for the district court to accept it. And so they have waived their ability to, even if this case is remanded for a trial on the facial aspect, they've waived their claim for individual damages. And I guess to better understand how it's a separate claim, is it was possible, had the court concluded well, the district court could have concluded that the regulation, the rule itself, is constitutional on its face. But it nevertheless was applied to this set of plaintiffs in an unconstitutional manner. And in that case, they would have been able to recover damages as an as-applied challenge. But it's a separate question. And therefore, on appeal, it's also a separate question. The fact that the court concluded that the rule was facially constitutional did not mean that the court, the district court also had to conclude that they had no as-applied claim. The court clearly concluded that they didn't have a claim for damages on the as-applied issue. And so they have waived that by not reviving it here. I thought I heard opposing counsel saying he was making a facial challenge, not as an applied challenge. In response to Judge Burns' question about whether this was an as-applied challenge or a facial challenge, counsel indicated that the arguments that he was making here were to the facial that he was saying, that this on its face is unconstitutional. But he made a comment that he didn't flesh out, but I understood him to be saying to Judge Burns that they had a separate as-applied claim, which, because we have argued that it was waived, he, of course, is arguing that it is not waived. And I believe that that's what he was referring to. I see that my time is starting to run out. Are there any other questions? No further questions, counsel. Okay. If I could make one more comment, because we haven't even talked about the search issue. On the search, the county's position is that there was no Fourth Amendment violation because they had no subjective or objective reasonable expectation of privacy. They brought this bag to the council meeting with the intention of distributing its contents. They announced their intention of distributing its contents. And so they could not have subjectively believed that those contents were private. And even if they did have that subjective belief, it was not objectively reasonable. Thank you. Thank you, counsel. Mr. Force, you have some reserve time. Thank you, Your Honor. I'll make a very passing observation with regard to that last comment. What counsel is saying is you don't have an expectation of privacy in a wrapped gift because eventually somebody is going to open it. That may be true. And I don't have an expectation of privacy, but I have an expectation of privacy of what's in my wallet standing here until I open it up and take out two bucks to buy a cup of coffee. Weren't they told the bag would be searched if they were going to go into the meeting room with the bag? Weren't they told that in advance? No. The deputy came out, said that Mr. Patrick had ordered him to search the bag and had told him that they had consented. We know that it is true that Commissioner Patrick ordered the deputy to search the bag. It is not true that anybody had consented to that. And absolutely nobody else before or since attending these meetings is subject to the search of any objects they bring in. Do they not consent by going into the meeting after the search? After the search, you can't consent after a search, Your Honor, under the Fourth Amendment. But they have the choice. Do they not have the clear choice to either be searched or attend the meeting? That choice was never given to them. The deputy came out, said that Commissioner Patrick had ordered him to search their bag. They resisted. They protested. And he said, I've been ordered to search the bag. And he searched the bag. That's what happened. The Kent case is an example of what the plaintiffs in this case are not asking to do. Mr. Kent said, you can't tell me I can only speak for a certain period of time. You can't tell me I can only speak at certain parts of the meeting. And you can't tell me that I can only speak about matters that are germane to the business of the Red Control Board. This court found that his right of speech was not so broad that those limitations could not be allowed under California law. Oregon does not have an equivalent of the California statutes that require every kind of local public body to provide an opportunity for public speech. In Oregon, if this defendant wants to have no public comment at its meetings, it can do that. But if you do it, you can't say what people can talk about and what they can't. That's all this case is about. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: D.W. Nelson, O'scannlain, Burns